(92 South. 747)

No. 25082.

**CONTINENTAL BANK & TRUST CO. v. SACKS.**

(May 29, 1922. Rehearing Denied by Division C June 28, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Appeal and error** ☞994(2) — **Judgment resting on credibility of witnesses not disturbed.**

Where the facts as to whether a bank acquired a note before or after maturity and whether it knew of the want of consideration were tried first before a jury, and afterwards by the judge, with a decision favorable to plaintiff in each instance, the judgment resting on the credibility of witnesses, with whose reputation for truth and veracity the jurors and trial judge are presumed to be acquainted, should not be disturbed.

2. **Pledges** ☞19—**Holder had right to consent to use as collateral security for third person's notes.**

The owner of a note, which he had pledged as collateral security for payment of his own note had a right, when his note was taken up by a third party, to consent that the collateral note should be left with a bank as collateral to the notes of a third person, where there was nothing on the face of the note to indicate that it was executed to be used as collateral in a particular transaction.

152 LA.—4

3. **Pledges** ☞9—**Consent to use of note as collateral held supported by valuable consideration.**

The payment of G.'s note to a bank for which plaintiff's note to G. was collateral security was valuable consideration for G.'s consent that plaintiff's note should be left with the bank as collateral for notes discounted by the party paying G.'s note.

4. **Pledges** ☞44—**Payment does not extinguish collateral note.**

A note pledged by the payee as collateral security for his own note was not extinguished by the payment of the payee's note.

5. **Alteration of instruments** ☞20—**Statute as to alteration without assent held to apply only to "parties" to instrument.**

Negotiable Instruments Act, § 124, providing that, where a negotiable instrument is materially altered "without the assent of all parties liable thereon," it is avoided, except as against a party who has himself made, authorized, or assented to the alteration, and subsequent indorsees, applies only to the parties to the instrument, and one holding the note as collateral security is not a party thereto.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Party.]

6. **Bills and notes** ☞378—**Holder of note held not "party" to alteration.**

Where a bank holding a note as collateral security, at the request of the payee, permitted him to take the note and, without its knowledge or consent, he indorsed words "without recourse" thereon, it was not a party to the alteration within Negotiable Instruments Act, § 124, providing that a holder in due course not a party to the alteration may enforce payment according to the original tenor.

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Judge.

Action by the Continental Bank & Trust Company against William Sacks. From a judgment for plaintiff, defendant appeals. Affirmed.

Crain, Benoit & Jackson, of Shreveport, and S. C. Rogers, of St. Louis, Mo., for appellant.

Cook & Cook, of Shreveport, for appellee.

By Division B, composed of Justices O'NIELL, LAND, and BAKER.

LAND, J. Plaintiff bank, as the alleged holder, owner, and pledgee in good faith, before maturity, and for valuable consideration, of a certain promissory note for $20,-000, made and executed by defendant, William Sacks, to the order of G. G. Gillette, and by him indorsed in blank and without recourse, has instituted this suit to collect said note from the defendant, and, alleging that defendant is a nonresident, has caused his property to be seized under a writ of attachment.

The note sued upon is of date March ·20, 1920, is made payable 60 days from date, and stipulates the payment of interest at 8 per cent. per annum from date, and attorney's fees at 10 per cent., in the event of suit for collection. The note upon its face is made payable at the Continental Bank & Trust Company, Shreveport, La., and plaintiff alleges that said note at its maturity was presented there for payment, which was refused; the defendant having made no provision for its payment.

Defendant admits in his answer that he signed the note sued upon, but alleges that said note was not in the hands of plaintiff bank at maturity, and was not presented for payment, as alleged, but that .plaintiff acquired said note long after maturity.

Defendant further alleges that he never received any consideration for signing said note, as plaintiff bank was well aware, and that G. G. Gillette, the payee of said note, agreed with the defendant, at the time it was signed, that he (Gillette) would pay the note at maturity, in whosoever hands it might be. Defendant further alleges that plaintiff bank acquired the note long after maturity, and subject to .all of the equities between the maker and the payee, and acquired no greater rights against defendant than the said G. G. Gillette had, and that therefore plaintiff bank is not entitled to recover any amount against defendant.

In a supplemental answer, defendant, reiterating the allegation that the note sued upon by plaintiff bank was obtained by G. G. Gillette, payee, entirely without consideration prayed for trial by jury, which was granted, and which resulted in a verdict in favor of plaintiff bank for the sum sued for, with interest and attorney's fees, and maintaining the writ of attachment.

A new trial having been granted, the case was submitted to the judge of the lower court, upon the record already made, and judgment was rendered in favor of plaintiff bank.

On December 18, 1919, G. G. Gillette discounted his note for $25,000 to plaintiff bank, and attached as collateral to said note five promissory notes executed by the defendant, William Sacks, each of date November 19, 1919, and each falling due February 17, 1920, and aggregating the sum of $25,583.33. These notes had been executed by the defendant William Sacks, payable to his own order, and were delivered by him to Gillette for the purchase price of certain interests, covering oil lands and bank stock, sold to defendant by Gillette.

The Gillette note for $25,000 matured January 10, 1920, and was renewed with the same collateral, and again renewed February 24, 1920, with the same collateral.

When Gillette's note for $25,000 matured March 1, 1920, he made a $5,000 payment on same, and renewed same, withdrawing one of the five notes of Sacks, and leaving with the bank four of said notes as collateral. When the note of Gillette for $20,000 fell due March 15, 1920, he did not renew same until March 27, 1920, and at this time Sacks' note for $20,000 herein sued upon, was attached as collateral to Gillette's note, which matured May 19, 1920.

However, on April 8, 1920, before the maturity of this last note, R. J. Dougherty called at plaintiff bank and desired to negotiate a

loan of $50,000, producing three notes of W. L. Montgomery, payable to order of plaintiff bank, and each indorsed by Dougherty. Two of these notes were each for $15,000, dated May 12, 1921, and fell due respectively September 12, 1921, and October 12, 1921. The third note for $20,000 was of date April 29, 1921, and matured October 29, 1921.

George M. Hearne, president of plaintiff bank, informed Gillette and Dougherty, when the latter, accompanied by Gillette, applied for a loan of $50,000 on April 8, 1920, that the bank could not handle the Montgomery notes, unless the Gillette note, with the Sacks note as collateral, was taken up. Dougherty consented to these conditions, purchased the Gillette note, secured by the Sacks note, paying the bank $20,000 cash for the Gillette note, and left the Sacks note, as agreed upon, with the bank as additional collateral to the Montgomery notes. The plaintiff bank then advanced Dougherty the sum of $30,000 on the Montgomery notes, protected by the Sacks note and other collaterals.

These facts are in our opinion well established by the testimony of George Hearne, president of the bank, R. L. McJeter, cashier, and by R. J. Dougherty. Their testimony further shows that the bank acquired the Sacks note as collateral to the Montgomery notes before maturity, and that neither the officials of said bank nor Dougherty were aware of any want of consideration on the part of Gillette in obtaining said note from Sacks.

Plaintiff's testimony also convinces us that the Sacks note was in the possession of the bank at maturity, and, after maturity was placed temporarily in the hands of Dougherty for collection, who failing to collect said note, returned it to the bank.

[1] It is true that the admissions by plaintiff bank as to what Gillette would testify, if present, in order to avoid a continuance in the case, and the testimony of the defendant Sacks, conflict with the testimony of the plaintiff's witnesses, as to when this Sacks note was acquired by the bank, whether before or after maturity, and also as to whether plaintiff bank was aware of the want of consideration on the part of Gillette in acquiring the Sacks note for $20,000; yet, in view of the fact, that this suit was tried first before a jury, and afterwards by the judge with a decision favorable to plaintiff bank in each instance we do not feel warranted in disturbing the judgment of the lower court as it necessarily rests upon the credibility of these witnesses and as the jurors and the trial judge are presumed to be acquainted with their reputations for truth and veracity in the community in which they reside.

[2, 3] The Sacks note was the property of Gillette held as security by the bank. He had a right, therefore, when his $20,000 note was paid by Dougherty to plaintiff bank, to consent that the Sacks note should be left with the bank as collateral to the Montgomery notes. The consideration for Gillette's consent to this transaction was the payment of his note by Dougherty. It was a valuable consideration. There is nothing upon the face of the Sacks note to notify third persons that it was executed for the specific purpose of being used by Gillette as collateral in any particular transaction. The testimony fails, in our opinion, to show that either the plaintiff bank or Dougherty knew of any of the equities existing between Sacks and Gillette. It is silent especially as to any knowledge, on the part of the plaintiff bank or by Dougherty, as to the existence of any agreement between Sacks and Gillette that this note should be used only as collateral for Gillette's $20,000 note, and then should be returned to its maker, Sacks.

[4] That the payment of the Gillette note did not extinguish the Sacks note is evident,

as the latter was a mere accessory obligation. Had the Sacks note been returned to Gillette, he could have negotiated it to any third person, as it was not yet due at the date of this transaction.

The testimony fails, in our opinion, to show that the words "without recourse" were indorsed by Gillette on said note before April 8, 1920. The cashier of plaintiff bank testifies that he saw the Sacks note before that date, and that it was not so indorsed, but that these words were written by Gillette on said note at a subsequent date, without the knowledge or consent of witness; who, at the request of Gillette to see the note, handed it to him, without any suspicion at the time as to Gillette's intentions.

Able counsel for defendant contend that this indorsement "without recourse" was a material alteration of the Sacks note, and that its effect was to nullify and destroy the altered instrument as a legal obligation, whether made with fraudulent intent or not, citing Daniel, Negotiable Instruments, vol. 2 (5th Ed.) p. 301.

Counsel for defendant state that this principle was early established in the law merchant, and, while sometimes apparently harsh in its application, was believed necessary in order to enforce and preserve the sanctity of obligations of the kind in question.

However, under section 196 of the Negotiable Instruments Act of this state, it is provided that the rules of the law merchant shall govern only in cases not provided for in this act.

An indorsement "without recourse" does not impair the negotiable character of the instrument, but constitutes the indorser a mere assignor of the title of the instrument. Act No. 64 of 1904, § 38.

Being a qualified indorsement, it warrants that the instrument is genuine in all respects what it purports to be, that the indorser has a good title to it, and that all prior parties had capacity to contract. Act No. 64 of 1904, § 65.

[5] Section 124 of the Negotiable Instruments Act provides:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration, and subsequent indorsees."

This paragraph clearly applies only to the parties to the instrument, "all parties liable thereon." The plaintiff bank is not a party to the Sacks note.

[6] The second paragraph of this section reads as follows:

"But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

The plaintiff bank, however, was not "a party to the alteration," as shown by the testimony, and is a "holder in due course," under our view of the testimony in this case.

The judgment of the lower court properly maintained the writ of attachment in this case, and rejected the defendant's reconventional demand for damages for the alleged wrongful and illegal issuance of said writ.

The judgment appealed from is therefore affirmed, at appellant's cost.

Rehearing refused by Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.